UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Plaintiff,

-vs-

CORDELL BROOKS,

                Defendant.

**DECISION AND ORDER**

23-CR-6209 CJS/MWP

---

This case was referred by text order of the undersigned, entered December 13, 2023, to Magistrate Judge Mark W. Pedersen, pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). On March 13, 2024, Defendant filed an omnibus motion, ECF No. 26, seeking *inter alia* suppression of any and all oral statements. In that regard, he maintains that any such statements:

    (1) ... were made pursuant to custodial interrogation prior to the *Miranda* warnings and in the absence of counsel;

    (2) the statements made involuntarily in violation of the defendant's Federal Constitutional rights, as well as defendant's common law rights;

    (3) the statements made in the absence of a valid waiver of the "*Miranda*" rights; and/or statements otherwise made in violation of the defendant's federal constitutional, statutory and/or common law rights.

Supporting Affirmation to Defendant's Notice of Motion, ECF No. 26, p. 10-11.

On May 6, 2024 , ECF No. 36, an evidentiary hearing was held regarding Defendant's application to suppress statements.  On August 16, 2024, Magistrate Judge Pedersen filed a Report and Recommendation ("R&R"), ECF No. 45, recommending that

Defendant's application to suppress statements made at B Zone of the Monroe County Sheriff's Department be granted, with the exception of the following statement which Magistrate Judge Pedersen found to be spontaneous: " I know, I know what you must've seen on the camera." However, as to any statements made at the time of his arrest, Magistrate Judge Pedersen recommended that Defendant's application to suppress be denied. On August 30, 2024, ECF No. 46, the Government timely filed objections to the R&R with respect to statements made at B Zone. Then on September 11, 2024, Defendant filed his response, ECF No. 47, to the Government's objections, but did not file any objections himself to the R&R's recommendation that his motion to suppress his initial statement at B Zone, " I know, I know what you must've seen on the camera," as well as his motion to suppress statements made at the time of his arrest, be denied.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the R&R to which objections have been made. Upon such *de novo* review of the transcript of the hearing held on May 6, 2024, as well as the exhibits received into evidence, including the video interview, received as Exhibit #2, the Court finds that Defendant was properly advised of his *Miranda* rights by Inv. Coco and, when asked if he understood his rights, responded "yes." Further, the Court finds, as contended by the Government, that the second question asked by Inv. Coco was "[h]aving these rights in mind, can we have a conversation about what happened," and not as Magistrate Judge Pedersen found "[h]aving these rights in mind, we'll have a conversation about what happened." There is no dispute that Defendant's response to this second question was "okay." However, instead of questioning Defendant about the matter under investigation, Inv. Coco chose to remind him of his right to stop talking at any time. Then he specifically

asked Defendant "[s]o you wanna talk," to which the defendant responded, "[n]o I don't honestly because there is nothing to talk about. There's nothin-there's nothin, you know that's bad that's going on." The Court agrees with the Government that context is important. The context is that Defendant indicated that he understood his constitutional rights including "if you wish to talk, you can stop at any time." See hearing Exhibit #3. The context is that initially Defendant said "okay" when asked "[h]aving these rights in mind, **can we have a conversation about what happened.**" This was in lieu of the language on Exhibit #3, "[h]aving these rights in mind, **do you wish to talk to me now.**" In exercising his constitutional right to change his mind and not talk, Defendant was directly responding to the original question put to him by Inv. Coco by saying "no" there is nothing to talk about because nothing happened. The Court finds that such statement, in context, was an unambiguous assertion on Defendant's part to his right to remain silent. See *Jones v. Harrington*, 829 F.3d 1128, 1139-40 (9th Cir. 2016) where, post *Berghuis v. Thompkins,* 560 U.S. 370, 381 (2010), the Ninth Circuit held:

> Here, there is no doubt officers violated *Miranda*. Certainly, Jones saying he "did not want to talk no more" qualifies as "indicat[ing] in any manner that he does not wish to be interrogated." *Miranda*, 384 U.S. at 445, 86 S.Ct. 1602 (emphasis added).
>
> ***
>
> No fairminded jurist could determine that Jones's invocation was ambiguous. First, Jones's initial request to remain silent was unambiguous on its face, and nothing about the prior context of the statement made it ambiguous or equivocal. Jones stated: "I don't want to talk no more"; in other words, he did not want to talk anymore. See *Garcia v. Long*, 808 F.3d 771, 773-74 (9th Cir. 2015) (holding that a suspect answering "no" to the question "[d]o you wish to talk to me?" was an unambiguous request to remain silent under *Miranda*). Jones did not equivocate by using words such as "maybe" or "might" or "I think." See *Anderson,* 516 F.3d at 788; cf. *Smith,* 469 U.S. at 96-97, 105 S.Ct. 490 (holding that nothing in the statement "Uh, yeah. I'd like to do that"

3

suggested equivocation). Nor did anything Jones did or said leading up to this statement make it ambiguous. During the interrogation leading up to this point, Jones spoke little. Most of the interrogation consisted of detectives repeatedly asking Jones questions and Jones giving short, often one-word answers. In any event, the fact that Jones spoke to officers for a while before invoking his right to remain silent makes no difference.

See also *United States v. Lara Lara*, 440 F. Supp. 3d 64, 69 (D. Mass. 2020), where the District Court of Massachusetts found:

> Even if the Defendant initially waived her rights voluntarily, knowingly, and intelligently, she remained free to invoke them at any point during the interrogation. See *Miranda*, 384 U.S. at 473-74, 86 S.Ct. 1602.
>
> ***
>
> When asked if she wanted to answer questions, Lara Lara answered "No" twice. See Tr. at 2. This plain statement triggered *Miranda* protections. Despite Lara Lara's clear invocation of her right, Shaughnessy again asked Lara Lara if she wanted to talk, to which she responded, "It's just that I don't have anything to talk about."

The Court further finds, thereafter, based upon the undisputed facts, that Defendant's invocation of his right to remain silent was not scrupulously honored. *Berghuis v. Thompkins,* 560 U.S. 370, 381 (2010); *Michigan v. Mosley*, 423 U.S. 96, (1975).

Accordingly, for the reasons set forth in Magistrate Judge Pedersen's R&R, ECF No. 45, with clarification by this Court, as indicated above, Defendant's application to suppress statements, ECF No. 26, is granted with respect to any statements made at B Zone, with the exception of his initial statement, "I know, I know what you must've seen on the camera." but denied as to any statements made at the time of his arrest.

IT IS SO ORDERED.

Dated: Rochester, New York
October 7, 2024

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge